IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Frances Andrews** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 2416 |
| | ) |
| **The City of Chicago,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On April 19, 2010, Frances Andrews filed a three-count complaint against her former employer, the City of Chicago, alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and a Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 et seq., interference claim. Now before me is defendant's motion for summary judgment of all claims, which I grant for the reasons that follow.

I.

Plaintiff began working for the City of Chicago in December of 1996. She occupied several positions in various departments over the years. Plaintiff uses a wheelchair on a permanent basis and did so throughout her employment with the City. Also throughout her employment, she attended physical therapy, with the City's

permission, two to three times a week, on a rotating, every-third-day basis.

In the fall of 2006, plaintiff began working for the Department of Buildings as an at-will, *Shakman*-exempt employee with the title of Deputy Commissioner. In mid-June of 2007, Richard Rodriguez, who was then the Commissioner of the Department of Construction and Permits, received a second, concurrent appointment as the Commissioner of the Department of Buildings. Within days of his appointment, Rodriguez initiated the merger of the two City departments he led. Rodriguez testified that after reviewing department organizational charts and researching job descriptions to identify how jobs could be consolidated, he decided to eliminate certain positions to "create efficiencies," and to "decrease expenses as much as possible."

Plaintiff states that the first time she met with Rodriguez after his appointment was on June 18, 2007, and that she told him at that time about her physical therapy schedule. According to plaintiff, Rodriguez requested that she provide him with documentation of the schedule, which they agreed she would do by Friday, June 22, 2007. Plaintiff did not speak to Rodriguez again before she and three other Deputy Commissioners were terminated on Friday, June 22, 2007.

The parties agree that plaintiff's performance was not a factor in her termination. In fact, Rodriguez testified that he had not worked with plaintiff long enough to gauge her performance

at all before making the decision to terminate her. He stated, "[i]t was not her, it was the title that she held. ... I had already thought about what titles, if we had to replace any, which titles we would have to replace." Rodriguez testified that only two Deputy Commissioners were retained after the merger: Dennis Mondero, who had previously been general counsel in the department, and Kevin Bush, a plumber who "supervised the plumbers and helped oversee the inspectors."[1] The record does not reveal the disability status of either of these individuals.

                                II.

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, as well as any affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009). In determining whether a genuine factual dispute exists, I must construe all facts in the light most favorable to plaintiff and draw all justifiable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *id.*, at 247-48 (original emphasis), nor will the existence of "some metaphysical

---

[1] I note that for its description of Mr. Bush's qualifications, the City cites to a portion of Mr. Rodriguez's testimony not included in the exhibits the City filed. But since plaintiff admits that Mr. Rodriguez testified as the City claims, I assume the citation is accurate.

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff must come forward with more than a mere scintilla of evidence in her favor to survive defendant's motion. *Anderson*, 477 U.S. at 251-52.

The ADA makes it unlawful for employers to discriminate against an employee on the basis of her disability. *Dickerson v. Board of Trustees of Community College District No. 522*,---F.3d---, 2011 WL 4349395, at *3 (7th Cir. 2011). A plaintiff can prove disability discrimination by using either the direct or the indirect method of proof. *Id*. at *4. The direct method requires either "an admission by the decision maker that his or her actions were based on the prohibited animus," or "circumstantial evidence that allows a jury to infer intentional discrimination." *Id*.

The indirect method requires a plaintiff first to establish a *prima facie* case of discrimination by showing that: 1) she is disabled under the ADA; 2) she was meeting her employer's legitimate employment expectations; 3) she suffered an adverse employment action; and 4) similarly situated employees without a disability were treated more favorably. *Id*. If a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *Id*. If the employer does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons are pretextual. *Id*.

Defendant first argues that plaintiff can point to no evidence, either direct or circumstantial, to prevail under the direct method. Defendant further argues that plaintiff cannot prevail on the indirect method because she fails to establish a *prima facie* case, and because even assuming that she could do so, she points to no evidence that the City's proffered reasons for terminating her were pretextual.

Plaintiff's misguided response to defendant's motion, which makes no reference at all to the legal framework or principles applicable to her ADA claims, reveals a fundamental misunderstanding of what is required to withstand summary judgment of such claims. Plaintiff rests her entire discrimination case on the speculation that because the "only" information Rodriguez had about her at the time he terminated her employment was 1) that she was wheelchair bound, and 2) that she had requested an accommodation so that she could undergo physical therapy, these factors must have been what motivated his decision to terminate her. Even assuming that this theory accurately reflected the record (a questionable assumption, since plaintiff does not controvert evidence that Rodriguez also knew plaintiff's job title), plaintiff proceeds without reference or regard to the elements of her claim, much less to the burdens she must carry to withstand summary judgment. Plaintiff is not entitled to freewheel her way to trial on arguments that ignore her own evidentiary burden, and that fail to respond to defendant's properly supported

motion. Summary judgment may be appropriate based on this failure alone. For the sake of completeness, however, I briefly explain, with reference to the appropriate legal standards, why plaintiff's claims cannot survive defendant's motion.

Plaintiff has presented no direct evidence that Rodriguez intentionally discriminated against her. She does not claim that Rodriguez admitted his actions were motivated by her disability, nor has she presented circumstantial evidence of the kind necessary to survive summary judgment. *See Dickerson*, 2011 WL 4349395 at *4 ("The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.") Indeed, plaintiff does not argue that any of the facts she asserts amount to direct evidence of discrimination, but instead builds her case explicitly upon inferences. Accordingly, I conclude without difficulty that plaintiff lacks sufficient direct evidence of discrimination to withstand summary judgment using the direct method of proof.

To survive summary judgment using the indirect method of proof, plaintiff would first have to establish a *prima facie* case of disability discrimination by showing, among other factors, that

similarly situated employees without a disability were treated more favorably than she. *See Dickerson*, 2011 WL 4349395, at *4. Plaintiff makes no effort to do so, and indeed, she fails to identify any evidence in the record from which one could draw this conclusion. As noted above, the disability status of only the two Deputy Commissioners who were *not* terminated along with plaintiff is unknown. Moreover, plaintiff offers no evidence to rebut defendants' assertion that these Deputy Commissioners were retained because of their particular qualifications, which allowed them to perform functions plaintiff does not claim to be qualified to perform.[2] Accordingly, plaintiff fails to establish a *prima facie* case of discrimination, and there is no need to proceed further with respect to her claim under the indirect method of proof.[3]

I now proceed to plaintiff's ADA retaliation claim, which requires little discussion. To prevail on such a claim, plaintiff must prove 1) that she engaged in a statutorily protected activity; 2) that she suffered an adverse action; and 3) a causal connection

---

[2]Plaintiff's objection that defendant's evidence should be disregarded as the testimony of an interested witness is without merit, and it rings particularly hollow in view of the fact that it is plaintiff who bears the initial burden of establishing that similarly situated, non-disabled employees were treated better than she--a burden she does not endeavor to carry.

[3]Again for completeness, however, I note that defendant articulates a non-discriminatory reason for her termination: to create efficiencies and reduce expenses post-departmental consolidation. Plaintiff presents no evidence to suggest that this reason was a pretext, so her claim could not proceed using the indirect method of proof, even if she had carried her initial burden.

between the two. *Dickerson*, 2011 WL 4349395, at *5. Plaintiff's claim falters at the gate because she identifies no statutorily protected activity. *See Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity.") Moreover, defendant raises this argument in its motion, but plaintiff offers no response, effectively abandoning her retaliation claim. *See Andree v. Siemens Energy and Automation, Inc*, 90 Fed. App'x 145, 152 (7th Cir. 2003) (concluding that claim was abandoned when plaintiff failed to respond to argument raised in motion for summary judgment, and further noting that "[a] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Id.*, quoting *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir.1997)).

Finally, plaintiff's FMLA interference claim borders on the frivolous. Even setting aside defendant's facially colorable argument that the claim is time-barred, plaintiff does not even claim to have provided notice of her intent to take leave, or to have been denied benefits to which she was entitled, both of which are essential elements of her claim. *See Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). Plaintiff's claim appears to rest entirely on her testimony that if had defendant stopped

8

accommodating her need to attend physical therapy, her "next step" would have been to request intermittent leave under the FMLA, coupled with her speculation that defendant would have denied her hypothetical request. This theory plainly has no legs in the law, or in the facts of this case.

### III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 30, 2011